(38 Misc. Rep. 189.)

PEOPLE ex rel. PRICE v. WOODBURY, Street Com'r, et al.

(Supreme Court, Special Term, New York County. June, 1902.)

CONSTITUTIONAL LAW—PENSIONERS—RIGHT TO HOLD OFFICE.

The charter of the city of New York (Laws 1897, c. 378, as amended by Laws 1901, c. 466), § 1560, forbids any pensioner of the city or any of its departments to hold any office, employment, or position under the city. *Held* unconstitutional as in violation of Const. 1894, art. 1, § 1, providing that no citizen shall be deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers.

Application by the people, on the relation of Alexander Price, for writ of mandamus to John M. Woodbury, commissioner of the street-cleaning department of the city of New York, and another. Application granted.

Roger Foster, for relator.

George L. Rives, Corp. Counsel (Theodore Connoly and W. B. Crowell, of counsel), for defendants.

LEVENTRITT, J. This is an application for a peremptory writ of mandamus requiring the defendants to reinstate the relator as section foreman in the department of street cleaning.

For a period of 20 years prior to May 25, 1894, the relator was a member of the police force of this city. On that date he was, pursuant to chapter 575 of the Laws of 1888, retired on his own application, and became entitled to a pension, which was fixed at $650 per annum by the police commissioners. Thereafter he became an employé of the street-cleaning department, and on December 31, 1901, he held the position of section foreman at an annual salary of $1,200. On December 31, 1901, the relator received the following letter:

"Sir: On the ground that you are now in the receipt of a pension from the city of New York, I declare your position as section foreman of this department forfeited by section 1560 of the Greater New York charter, and I therefore dismiss you from the service of this department for the above-mentioned reason alone, to take effect at the end of this year, 1901.

"Respectfully,        P. E. Nagle, Commissioner."

It is claimed by the relator that his removal pursuant to the notice was illegal.

Section 1560 of the charter, as it became operative on January 1, 1902, provides as follows:

"No person now receiving or who may hereafter receive any pension from the city of New York or any of the departments thereof, or out of any fund

under said city or any of its departments, shall hold any office, employment or position under the city of New York or any of the counties included within said city. Any officer, subordinate or employé of said city or any of its departments or any of the counties included within said city now in receipt of any such pension shall forthwith forfeit such office, position or employment."

I am of the opinion that this provision is violative of the state constitution, and, primarily, of article 1, § 1, which commands that no member of the state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers. I am aware that, in this department at least, it has not been the usual practice to declare a law unconstitutional in the first instance at special term, but that its legality, where it has been attacked, has been affirmed pro forma, leaving it to the higher tribunal to declare its nullity. This has usually been done so that established order should not be interfered with until an appellate court has given at least some finality to the litigation. In this instance, however, I am not disposed to follow the practice; the granting of a stay pending appeal will prevent any disturbance of office. The provision strikes me, at least, as so obviously unconstitutional that I cannot omit, even at the risk, perhaps, of a departure from an unwritten rule of practice, briefly to state the reasons of my conclusion.

The theory as well as the spirit underlying all democratic constitutions is to deny to no one living under them, to no member of the state, the right to hold office. The trusts, offices, or employments within the gift or at the disposition of the conferring power, whether by vote or by appointment, are for all the citizens. This is the general rule, and, so far as we find it modified in particular instances, the reason is to be sought and found in certain properly continued inhibitions of the common law, express constitutional disqualification, or in legislative enactments following both the common law and the reasonable intendments of the constitution. While not, strictly speaking, a natural right or one guarantied inviolable by the constitution, it flows, nevertheless, from the general scheme of that instrument and the spirit of our institutions. "Eligibility to office is not declared as a right or principle by any express terms of the constitution, but it results, as a just deduction, from the express powers and provisions of the system." Barker v. People, 3 Cow. 686, 703, 15 Am. Dec. 322. "The right to hold a public office under our political system is an implied attribute of citizenship, and is presumed to be coextensive with that of voting at an election held for the purpose of choosing an incumbent for that office." Mechem, Pub. Off. § 67.

General eligibility is the rule; disqualification is the exception. The particular constitution may, of course, impose any disqualification which the sovereign will of the people may have seen fit to incorporate in the instrument, but it should be remembered that these restrictions are exceptional. Within certain very narrow limits, the legislature may impose additional disqualifications, or, rather, certain disqualifications declared by the legislature have been sustained, not so much by virtue of any inherent power of the lawmaking body

to limit eligibility in the broadest sense, as by virtue of proper construction of reasonable intendments of the constitution. These legislative disqualifications, however, are likewise exceptional. In addition to these two classes there is, perhaps, a third—disqualifications like the one that no person shall hold incompatible offices, which have been carried over and continued from the common law (People v. Green, 5 Daly, 254; People v. Carrique, 2 Hill, 93); but this class can be reasonably deduced from the spirit and intent of the constitution itself, and the application of the old common-law rules can be treated as but the expression, legislative or otherwise, of reasonable constitutional intendment. In other words, all disqualifications are strictly constitutional whether express or implied, and all are to be treated as restrictive of the general tendency that concedes to all citizens all civil and political rights. "To be a citizen is to be qualified for the enjoyment of any right or privilege under our state government. * * * At any rate this is the rule, and no presumption is to be indulged against it. This fundamental right of each citizen as a citizen can be impaired only by express provisions of law." People v. May, 3 Mich. 598, 603. Such exceptions as exist are few and well defined. The maxim, "Expressio unius est exclusio alterius," is to be applied in all its rigor. Story, Const. 628.

Specifically, the underlying general rule has not been frequently or precisely stated in our cases. It has rather been taken for granted in most instances, and its terms are to be deduced from the manner of its application. In an early case, however, the general principles have been well summarized. The chancellor in Barker v. People, supra, says:

"Eligibility to public trusts is claimed as a constitutional right which cannot be abridged or impaired. The constitution establishes and defines the right of suffrage, and gives to the electors and to various authorities the power to confer public trusts. * * * Excepting particular exclusions thus established, the electors and the appointing authorities are, by the constitution, wholly free to confer public stations upon any person, according to their pleasure. The constitution giving the right of election and the right of appointment; these rights existing essentially, in the freedom of choice; and the constitution also declaring that certain persons are not eligible to office,—it follows from these powers and provisions that all other persons are eligible. * * * I therefore conceive it to be entirely clear that the legislature cannot establish arbitrary exclusions from office, or any general regulation requiring qualifications, which the constitution has not required." Page 703.

If we examine the disqualifications which are recognized we shall find that, barring arbitrary constitutional exclusions, they fall either within the class requiring certain necessary qualifications for all offices, or within that requiring necessary qualifications for a particular office. Of the former class are mental incapacity, insufficient age or residence, lack of citizenship, holding a prior or incompatible office, criminal character, and, perhaps, property qualifications. Mechem, Pub. Off. § 68 et seq. Of the latter class are those professional attainments deemed necessary for the proper performance of the duties of specific office. "Looking at it as a matter of common sense, we are quite sure that the framers of our organic law never intended to approve a constitutional barrier to the right of the people through their legis-

lature to enact laws which should have for their sole object the possession of fit and proper qualifications for the performance of the duties of a public office on the part of him who desired to be appointed to such office." Rogers v. City of Buffalo, 123 N. Y. 173, 25 N. E. 274, 9 L. R. A. 579. So, provisions that only lawyers shall be eligible to the office of corporation attorney, physicians to health boards, or civil engineers to boards of public works, are reasonable and proper. Throop, Pub. Off. § 73; 19 Am. & Eng. Enc. Law, 398.

It is difficult to see, however, how the receipt of a pension from a city department should disqualify one, either generally or specially, for the performance of all the duties of any of the thousands of the offices or positions at the disposal of the municipality, especially so in this case, where old age or infirmity is not a factor. A policeman who has served faithfully and continuously for 20 years may, on his own application, retire on half pay. The period of required service as a condition to the allowance of a pension permits retirement in prime of life, when the pensioner is presumably in the possession of full bodily and mental powers. To say to him, by virtue of a sweeping, general provision, entirely unrelated to the particular act or law under which he receives his pension, "You shall not be eligible to any office, position, or employment so long as you are in receipt of your pension or unless you give up your pension," is to my mind equivalent to partial disfranchisement, and to the denial of those privileges and rights secured to other members of the state. I take it that it will not be disputed for an instant that, in the absence of an express constitutional exclusion, a provision which should declare that no person in receipt of an income of more than $650 a year shall be eligible to any city office, position, or employment would be flatly unconstitutional. It is difficult to see how the provision would suddenly become constitutional, or how it would cease to be an interference with the individual's constitutional right to be regarded as eligible to all positions, if it should deny eligibility to those receiving that amount of income from a city department. The receipt of the income does not constitute holding an incompatible office; it does not preclude the possession of either the general or special qualifications already referred to; nor is it in any wise related to any other express disqualification. Arguments may be advanced in its favor from the standpoint of municipal economy, but not from that of constitutionality. The constitution might arbitrarily provide that test if the people saw fit to adopt it, but, in the absence of such a provision, the legislature is powerless to enact it. It is not a means to secure efficient or intelligent service, and amounts to an arbitrary, unwarranted, exclusion from constitutional right and privilege.

I realize that this section of the charter would at first blush strike the average reader as entirely proper and constitutional. Proper, perhaps it is, if we consider solely the end in view; but unconstitutional it also is, if we consider the means adopted to secure that end.

It is not my purpose here to enter into an analysis of the theory of a pension. Whether the intent of the legislature was that no

person should at the same time derive income from two city sources; or that the recipient of a pension, thus securing some means of livelihood for life, should not be allowed to deprive a less fortunate brother of a position in the city service,—much might be said in favor of either construction on social and economic grounds. But here we have to deal simply with the proper execution of that intent. A remedy, to my mind, if one be sought, exists; and the underlying appreciation that the principle involved may be right leads to the confusion of ideas as to the law's constitutionality. If it is deemed advisable to limit a city pensioner's right to his pension to his continued nonacceptance of city employment, the prohibition would have to be incorporated, if at all, in the act granting him his pension. It is settled beyond dispute that a pension is a mere bounty or gratuity, an allowance without consideration, which the granting authority may cancel, withhold, distribute, or recall in its discretion. It confers no vested rights, and acts repealing statutes awarding to certain persons gratuities or bounties have repeatedly been held to be constitutional. Nagle v. Stagg, 15 Abb. Prac. (N. S.) 348; People v. Roper, 35 N. Y. 629; U. S. v. Teller, 45 C. C. A. 416, 106 Fed. 447; Walton v. Cotton, 19 How. 355, 15 L. Ed. 658; Frisbie v. U. S., 157 U. S. 160, 15 Sup. Ct. 586, 39 L. Ed. 657; Pennie v. Reis, 80 Cal. 266, 22 Pac. 176; Id., 132 U. S. 464, 10 Sup. Ct. 149, 33 L. Ed. 426. I am not now called upon to consider the question whether the particular fund from which the relator derives his pension has characteristics which would prevent the application of the general rule. It is unnecessary to do so, as the charter section under construction is sweeping, and applies to all pensions. The rule is applicable wherever the allowance is strictly a pension as that term has been construed in the law; and under that rule it seems that the legislature, being the granting authority, would have ample power to incorporate a provision in the act allowing the pension, to the effect that it should terminate or become forfeited if the pensioner accepts another office. There is the remedy, if remedy be sought, but the end cannot be accomplished by a general act announcing a rule as to eligibility in conflict with the general provisions and the spirit and intent of the constitution.

So far as I have been able to discover, the question here discussed has never been passed upon in this state, and no specific authorities can be cited in its support. The numerous opinions, however, in the case of Rathbone v. Wirth, 6 App. Div. 277, 40 N. Y. Supp. 535; Id., 150 N. Y. 459, 45 N. E. 15, 34 L. R. A. 408; and especially the unreported one of Mr. Justice Parker at special term,—may be referred to with profit for underlying principles equally applicable to the case at bar. The relator is entitled to a writ.

Application granted.