(60 Misc. Rep. 613.)

PEOPLE v. AHEARN.

(Supreme Court, Special Term, New York County.   October, 1908.)

MUNICIPAL CORPORATIONS (§ 138*)—OFFICERS—ELECTION—DISQUALIFICATION.

Where the board of aldermen choose a person to fill a vacancy in the office of president of one of the boroughs of the city of New York in the manner prescribed by law, he is not disqualified from holding such office because the vacancy therein arose from his removal from that office by the Governor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 313; Dec. Dig. § 138.*]

Proceeding by the People against John F. Ahearn.   Demurrer to complaint sustained.

W. S. Jackson, Atty. Gen., for the People.
Martin W. Littleton, for defendant.

McCALL, J.   The office the title whereof as found in the present incumbent is attacked by this litigation is, under our Constitution, a local elective one.   Const. N. Y. art. 10, § 2.   By section 382 of the charter (Laws 1901, p. 161, c. 466) it is provided that the president of the borough "is elected by the electors of the borough."   In November of the year 1905, John F. Ahearn, the present incumbent, was chosen by the borough suffrage to fill the office for a term of four years, beginning with the 1st day of January, 1906.   On the latter date, having taken his oath of office, he entered upon the performance of his duties and remained therein until the 9th day of December, 1907, when, as the result of charges made against him, and after a hearing thereon, it was essayed to remove him therefrom by an order of the Governor of the state.   If capacity or authority is to be found in the chief executive of the state at all for the exercise of this power over local elective officers, it must be spelled from or predicated upon section 382 of the charter, which provides, "A president of a borough may be removed in the same manner as the mayor," section 122 of the charter, which provides, "The mayor may be removed from office by the Governor in the same manner as sheriffs, except that the Governor may direct the inquiry provided by law to be conducted by the Attorney General," and section 1, art. 10, of the Constitution, which provides, "The Governor may remove any officer [sheriff] within the term for which he shall have been elected, giving to such officer a copy of the charges against him and an opportunity of being heard in his defense."

Any treatment or any discussion of this power with which it was seemingly intended to clothe the Governor over local elective officers, by legislative enactment found in the expression of these charter provisions, supra, similar in nature to the authority vouchsafed him by constitutional provisions over state officers, or those exercising quasi state powers, is rendered unnecessary by reason of not being embraced within the issues that are presented by the pleadings in this litigation.   But I will not pass the same by without expressing

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

my view that any presentation of this question which will call for judicial decision will involve a proposition of seriously doubtful aspect bearing upon the constitutionality of such legislation in its violation of the so-called "home-rule" doctrine or principle. In so far as these pleadings go, it is shown that Mr. Ahern was removed, and that he practically accepted the same and abandoned his rights to the title of the office as originally given to him by the electorate of the borough, and whatever questions arise are to be considered from what subsequently followed. He was removed, and the legality of that removal is not made an issue by these pleadings. That removal worked a vacancy. How was it to be filled? The provisions of the Constitution give the power to the Legislature, and it has provided by enactment that:

"Any vacancy in the office of president caused by removal from the borough or otherwise shall be filled for the unexpired term by an election to such vacancy by a majority vote of all members of the board of aldermen then in office representing said borough. And in case of any such vacancy it should be the duty of the mayor forthwith to call such members in session for such an election, and to preside thereat, but he shall not vote unless his vote be necessary to decide the election." Charter (Laws 1901, p. 161, c. 466) § 382.

It may be accepted that, though the phraseology employed states this process of choosing to be an "election," under our Constitution it is an "appointment"; but nevertheless that appointing power is truly representative of the people of the borough, and in its employment all the requirements of local self-government are preserved. This provision or requirement of law was fully complied with, and the members of the board of aldermen, representing this borough, were convened on the 19th day of December, 1907, and the defendant was regularly and legally, in so far as form is concerned, chosen to fill the unexpired term caused by the vacancy created as already referred to. On that same day the defendant took and filed his oath of office and entered upon the duties thereof. Now come the people of the state, and through their legal representative, the Attorney General, alleging that the defendant claims to hold and occupy his office solely by action of the board of aldermen, assert that he usurps the functions thereof and demand that he be removed and ousted therefrom. If these assertions are possessed of legal substance, if there is sufficient basis to them whereon to predicate a cause of action, and hence render the pleadings sound, such substance or basis must be found in the answer to these three questions: First. Was there a vacancy or not? Second. Was there or was there not a legal method provided to fill that vacancy? and, if there was, were the provisions of law applicable thereto complied with? Third. Was the individual chosen eligible?

Two of these questions have already been answered, viz., that there was a vacancy (at least in so far as the issues raised by these pleadings are concerned), and that there was a method provided by law to fill such vacancy, and all the provisions of that enactment, in so far as form is concerned, were complied with. If, then, this complaint is to be sustained, it will and must necessarily be because the defendant was ineligible to fill the place he was called to. Is

there anywhere in the statutes aught to be found that is prohibitive of this defendant's incumbency? One of the prerequisites is that he be and remain a citizen of the borough during his incumbency. That he fails to meet this requirement is not asserted or even suggested. Does he fall under the ban of any exclusion arbitrarily or otherwise asserted by legal enactment? I fail to find the same, and a thorough search of the statutes fails to reveal any. There may be a world of fine-spun theories that can be suggested as operative and controlling; but a better forum for the advocacy of the same is in constitutional conventions or legislative bodies that have to do with the making of laws, fundamental and otherwise, and not in a court of justice, whose duties should be confined to the interpretation and application of laws as they exist. . If in our form of government, based upon the fundamental law, it was intended that removal from a public trust should also carry with it the penalty of depriving the person so removed from again holding or being chosen to the same, a clear expression of such an intention would be found therein. Where is there to be found such an expression applicable to this case? If the lawmaking power, as found in our legislative bodies, had the power or authority to arbitrarily abridge or impair the eligibility to public trust, and it was their intention so to do, such a provision could be speedily pointed to; but as a fact no such provision exists to apply to this case and no such intent can be discovered. But one instance in all our statutes can be found wherein the legislative authority gives flat expression to their purpose to render ineligible for reappointment a person who has been removed from office (see chapter 33, p. 41, Laws 1901), showing by this very enactment itself that if the power existed and they determined to exercise it, they would not leave their purpose to be deduced by implication, but that they would give express utterance to their intent, and as to the validity or soundness of such legislation if attempted. People ex rel. Devery v. Coler, 173 N. Y. 103, 65 N. E. 956, is peculiarly and emphatically expressive:

"Eligibility to public trust is claimed as a constitutional right which cannot be abridged or impaired. The Constitution establishes and defines the right of suffrage, and gives to the electors and to various authorities the power to confer public trust. It prescribes in respect to certain offices particular circumstances without which a person is not eligible to those stations, and it provides that persons holding certain offices shall hold no other public trust. Excepting particular exclusions thus established, the electors and the appointing authorities are, by the Constitution, wholly free to confer public station upon any person according to their pleasure. The Constitution giving the right of election and the right of appointment, these rights consisting essentially in the freedom of choice, and the Constitution also declaring that certain persons are not eligible to office, it follows from these powers and provisions that all other persons are eligible. Eligibility to office is not declared as a right or principle by any express terms of the Constitution, but it results as a just deduction from the express powers and provisions of the system. The basis of the principle is the absolute liberty of the elector and the appointing authorities to choose and appoint any person who is not made ineligible by the Constitution. Eligibility to office, therefore, belongs not exclusively or especially to electors enjoying the right of suffrage. It belongs equally to all persons whomsoever, not excluded by the Constitution. Barker v. People, 3 Cow. 686, 15 Am. Dec. 322, 703."

There being, therefore, a vacancy, a regular and legal filling of the same, and the party chosen being unquestionably eligible, it follows that the demurrer should be sustained, with costs.