THE PEOPLE *ex rel.* JAMES RYAN *against* ANDREW H. GREEN, COMPTROLLER OF THE CITY OF NEW YORK.*

The office of deputy clerk of the Court of Special Sessions, in the city of New York, is not incompatible with that of member of the Legislature of this State, and both offices may be held at the same time by the same person.†

Such a deputy clerk does not, by attending at Albany to perform his duties as member of Assembly, and in consequence thereof absenting himself from the city of New York, where his duties as deputy clerk are to be performed, forfeit his right to his salary as deputy clerk during the time of such absence.

The incompatibility of the same person to hold two offices arises at common law, where the one office is subordinate and subject to the supervision or control of the other, and upon the principle that a person cannot be both master and servant, or principal and subordinate. It does not arise, however, from the mere physical inability of the incumbent to be constantly present and engaged in the business of each, or to be ready to perform simultaneously all the duties they respectively require.

APPEAL from an order made at the special term of this court, directing a peremptory writ of mandamus to issue.

The relator obtained an order for an alternative writ of mandamus to compel the comptroller of the city of New York to pay him his salary as deputy clerk of the Court of Special Sessions in New York city, fo · the months of February, March, April, and May, 1873, and on the writ being issued the comptroller made return to it, that subsequently to the appointment of the relator to such office, to wit, in the year 1872, the relator was duly elected a member of the Legislature of the State of New York, and accepted such office, and en-

---

* On appeal to the Court of Appeals, the order of general term here was reversed, on the ground that it did appear by the relator's affidavits that his claim had ever been audited by the board of supervisors and the auditor of the finance department, and the vouchers therefor examined and approved; but that court concurred in the decision here as to the incompatibility of the two offices held by the relator (see *People ex rel. Ryan* v. *Green*, 58 N. Y. 295).

† By L. 1873, c. 335, § 114, it is now provided that any person holding office under the city government (of New York city), who shall during his term accept a seat in the State Legislature, shall be deemed thereby to have vacated his office.

tered upon the performance of the duties thereof, and was engaged in such performance during the months of February, March, April, and May, 1873. That the duties of said last named office required the presence of said relator during the period last named, in the city of Albany, and rendered it impossible for him to perform the duties of the first named office of deputy clerk, which required his personal presence in the city of New York in order to perform the same. That the said relator was absent from the city of New York during the months of February, March, April, and May, 1873, in attendance upon the Legislature, and did not peform the duties of deputy clerk of the Court of Special Sessions during that time.

The court at special term (J. F. DALY, J., presiding), held the return to be insufficient, for the reasons stated in the following opinion:

"The relator was appointed on May 1, 1870, deputy clerk of the Court of Special Sessions of the Peace for the city and county of New York, pursuant to the act, chapter 383, Laws of 1870, and reappointed as such deputy clerk under the provisions of the act, chapter 373, Laws of 1872. While such deputy clerk, he was, in November, 1872, elected a member of Assembly for the year 1873, and accepted such office, and served as a member of the Legislature of the State, during the months of February, March, April, and May, 1873. The comptroller of the city and county of New York refused to pay him salary as deputy clerk of the Special Sessions during the said months, on the ground that he vacated the office of deputy clerk by accepting that of member of Assembly. No provision is found in the Constitution or in the statute law of this State to that effect, but it is claimed that at common law the two offices are incompatible, and the acceptance of the last vacated the first. The principle is an old and well settled one that no person can hold incompatible offices. According to an early authority, incompatibility as to office is divided into two classes: 'Offices are said to be incompatible and inconsistent, so as to be executed by the same person; 1st. When from the multiplicity of business in them, they cannot be executed with care and ability, or; 2d. When, they being subordinate and

interfering with each other, it induces a presumption they cannot be executed with impartiality and honesty' (4 Inst. 100 Bac. Abr. tit. Office, *K*).

" Among the multitude of cases reported containing adjudications as to what constitutes incompatibility in offices, illustrations are found of the latter class, and none whatever of the former. Indeed, where the question arose concerning the incumbent of two offices, which bore no relation subordinating one to the other, it has been invariably held that they were not incompatible. The cases of adjudged incompatibility may be briefly stated.

" In *Rex* v. *Pateman* (2 Term R. 777), the defendant held the offices of alderman and town clerk. These were held to be incompatible, because the clerk was a ministerial officer in the court held by the alderman, and because the accounts of the clerk were audited by the alderman.

" In *Verreer* v. *Mayor of Sandwich* (1 Sid. 363 ; 2 Keb. 92), the defendant was mayor and town clerk, and the offices were declared incompatible, because the former was a judicial, and the latter a ministerial officer in the same court. The clerk might be fined by the court of record held by the mayor.

" In 4 Inst. 310, the cases are cited of a forester, by patent for life, who was made a justice in Eyre for the same forest, and of a warden of the forest made justice in Eyre of the same forest. These were adjudged incompatible, because it was the duty of the justice to judge the acts of the forester and the warden, and therefore both offices should not be held by the same person.

" In *Dyer's Case* (Dyer, 158–6), a justice of the Common Pleas was made justice of the King's Bench, and these offices were said to be incompatible, because the duty of the latter court was to correct the errors of the former.

" In the case of *Blissell* (Note to *Rex* v. *Godwin*, 1 Doug. R. 397), where one attempted to hold the offices of alderman and of chamberlain in the same municipal corporation, it was held that the offices were incompatible, because the aldermen were to audit the chamberlain's accounts, and in holding both, the defendant would have to supervise his own accounts.

" The case of *Millward* v. *Thatcher* (2 Term R. 82), illustrates the same principle, although it is not, strictly speaking, an authority on the point, because the discussion of the question of incompatibility was not necessary to the determination of the case, and was so stated by all the judges, by Ashurst, J., particularly, on whose *dictum* much stress is laid in opposing the claim of the relator in this court.    Thatcher was one of twelve jurats or aldermen of the borough of Hastings.    Any two of the jurats, with the mayor, might hold the court of record for the borough.    Thatcher was elected town clerk, and assumed to hold both offices, although the town clerk was clerk of the court holden by the jurats, and he was thus a judicial and ministerial officer in the same court.    He urged that as there were twelve jurats, and any two might hold the court, he would possibly be never called on to sit.    Ashurst, J., said that it was not necessary to decide the question of incompatibility, but if it were, he should say that the offices were incompatible, because there might be cases where it would be absolutely necessary for him to act as jurat, as in case of the sickness of all the others ; and if there were one possible case in which he might be called on to act, that was an answer to the argument. Butler, J., said that as the charter of the borough provided for a mayor, twenty-four jurats, and a town clerk, the corporation could not reduce the number by consolidating two of the offices. Gross, J., put his decision in favor of the defendant, because the action was brought to test the right to the last office accepted, that of town clerk.    Judgment in the case was unanimously given for the defendant Thatcher, the court saying that if the offices were compatible, he was rightfully in the second office; and if they were incompatible, he was also rightfully in the second office, because the acceptance of the last office vacated the first held.    This case, in fact, stands as authority on the last point alone, for it definitely settled which office was vacated, if a person accepted two incompatible ones. The principle was first adopted in *Rex* v. *Trelawney* (3 Burr. 1615), that whether the last office were superior or inferior to the first, the first was the one vacated.    And this is the rule to this day in England and America.    Thus much attention has

been given to the case of *Millward* v. *Thatcher*, because the *dictum* of Ashurst, J., above quoted, to the effect that if an occasion might ever arise where an incumbent of two offices was called on to perform the duties of both at the same time, the offices were incompatible, is, as a general proposition, likely to mislead. In the first place, it was not an enunciation of any principle involved in the decision of the case; and in the next place, the incompatibility of the offices held by Thatcher arose solely from their relation to each other in the same court—one being subordinate and ministerial, and the other judicial. And this view of that case is expressed in a later English case (1830, *Rex* v. *Jones*, 1 Barn. & Ald. 677). Littledale, J., speaking of it and two others, cited above, saying : ' *Verrier* v. *Mayor of Sandwich*, *Millward* v. *Thatcher*, and *Rex* v. *Pateman*, are clearly distinguishable from the present case. The offices of mayor, of jurat, and of alderman, in those cases, were judicial, and therefore incompatible with that of town clerk, and in the latter case, the town clerk's accounts were audited by the aldermen.'

"In *Rex* v. *Patterson* (4 B. & Ad. 15), where the defendant, being an alderman and justice of the peace, was appointed county treasurer, it was intimated by the court (1832) that the offices were incompatible, because the treasurer was a ministerial officer under the justices, and had to deliver in his accounts to them.

"In *Rex* v. *Lizzard* (9 B. & C. 421), the defendant was clerk of the borough of Weymouth, and also alderman. The offices were held to be incompatible, because, says Lord Tenterden, the clerk was removable by the aldermen for neglect of duty, and he would have a vote on his own removal ; thus filling the incompatible offices of master and servant, and so because he would, as alderman, have a vote on his own salary as clerk. Bayley, J., said he thought two offices were incompatible where the holder cannot in every instance discharge the duties of each ; and in the two questions of amotion and salary, the town clerk was not competent to discharge the duty of an alderman.

"The illustration here given by Bayley, J., shows that his

remark does not apply to the *physical* ability of the incumbent to discharge the duties of each office in every instance, but to the impropriety and impolicy of permitting him to do so. Even if a wider application be given to it, it would not, as other cases in England and America show, apply to cases where the incumbent of two offices has a deputy or assistant to perform the duties of one, while he is personally employed in the other. It will be perceived that in all the cases reviewed, the offices declared incompatible are such as bear a special relation to each other, one being subordinate to and interfering with the other, so as, in the language of Coke, to induce the presumption that they cannot be executed with impartiality and honesty.

" And there are no cases of adjudged incompatibility involving any other principle.

" The books, on the other hand, contain many cases where two or more offices, held by the same person, are declared not to be incompatible, but rightfully enjoyed.

" In *Rex* v. *Trelawney* (3 Burr. 1615), the defendant held the offices of steward and capital burgess of the same corporation, and the court refused to oust him, because the offices, by custom, had been held together for a hundred years back. This authority for one incumbent holding two offices, arising from custom or usage, is discussed and recognized in cases referred to below.

" In *Rex* v. *Jones* (1 B. & Ald. 677), the defendant was chosen town clerk of the borough of Cermarthen, and afterwards elected councilman, and held both offices. It was the duty of the town clerk to attend the meetings of the common council, and record their proceedings, and also act as prothonotary of the court of record of the borough.

" The defendant acted as councilman, voting, &c., and immediately afterwards acted as town clerk, recording the proceedings. Lord Tenterden said that the offices were not incompatible, but if the persons filling the offices were in relation of master and servant, they would be. Littledale, J., concurred, because the common council had no power to regulate the fees of the clerk. Taunton, J., said that no particular rule

could be laid down, but every case of incompatibility must depend upon its own particular circumstances. The judges in this case distinguished it from those of *Rex* v. *Pateman*, *Verrier* v. *Mayor of Sandwich*, and *Millward* v. *Thatcher* (*supra*), because in those cases the defendants assumed to hold offices, the duties of which were respectively *judicial* and *ministerial*, and therefore incompatible.

" In the United States the common law doctrine of incompatibility of offices has been fully recognized, but the cases under it show that the mere fact of one incumbent holding two offices does not vacate the first, unless there is an incompatibility arising from the nature of the offices and their relation to each other, or from the necessity of the incumbent performing the duties of both offices at all times in person, and not by deputy.

" In the *State of Missouri* v. *Moore* (48 Mo. 242), the relator was county clerk, and afterwards elected clerk of the Circuit Court. It was held that the offices were not incompatible, although the duties would have to be performed at the same time in different places, because they might be performed by deputy; that if the duties were necessarily personal, the offices would be incompatible, and finally, that as the offices had been held by one person from the earliest history of the State, and the Legislature, while declaring other offices incompatible, were silent as to this, such tacit approval of the practice must have great weight. The case of the *State of Missouri ex rel. Owens* v. *Draper* was cited, but in that case the incompatibility was adjudged under special provisions of the State Constitution and laws of Missouri.

" In *Bryan* v. *Cattell* (15 Iowa, 550), the plaintiff was district attorney of the county, and accepted a commission as captain in the volunteer service of the United States, and absented himself on active duty from his office. It was said by the court that the office of district attorney was not vacated by accepting the other, and that incompatibility of office exists where the nature and duties of the two offices are such as to render it improper, from considerations of public policy, for an incumbent to retain both. It does not necessarily arise where

the incumbent places himself for the time being in a position where it is impossible to discharge the duties of both offices.

" The brief review here given will show the tendency of the cases on the question of incompatibility. Lord Mansfield said in *Rex* v. *Gayer* (1 Burr. 245), that ' the general questions concerning incompatibility of offices are a large field indeed,' and it seems difficult to judge every case by one inflexible rule, or to do more than follow the suggestions of Taunton, J., in (*Rex* v. *Jones*) *supra*, and judge every case by its own particular circumstances. The office of deputy clerk of the Court of Special Sessions is not, as its name might indicate, a subordinate office, whose powers and duties are those delegated by the clerk of that court. The name is a mere distinguishing appellation of an office equal in its functions in all respects to that of clerk of the Court of Special Sessions. The two officers are appointed by the same authority, for the same term, take separate oaths of office, and file separate official bonds ; they are wholly independent of each other, as to duties, all those performed by the deputy clerk are such as are to be performed by the clerk, although there are special duties to be performed by the clerk alone.

" If the two officers be present at the same time, there are duties but for one, and in the absence of the deputy clerk the clerk may perform all the duties (L. of 1858, c. 282). The absence of the deputy clerk, therefore, does not impede the performance of the duties of that office by the clerk.

" Nor is it because the relator is called deputy clerk that his duties cannot be performed by an assistant. His powers are not delegated from the clerk, but are derived directly from the statute, and whatever powers the clerk might delegate, the deputy might equally.

" If the clerk accepted the office of member of Assembly, and could answer objections thereto, that all the duties of clerk were performed by the deputy clerk, or such as acted for him, and no inconvenience had ensued or could ensue, the deputy clerk may well urge that in his absence all the duties of their common office were performed by the clerk, and it is not necessary that he should at all times be present in person, there

being a common duty for him and the clerk that can be performed but by one at a time.

"The office of deputy clerk is held for a term of six years, that of a member of Assembly for one year, with a term of service not contemplated to extend beyond a hundred days (Court, 1846, art. 3, § 6), and seldom extending longer than five months, making in the case of the relator but a temporary absence for a short period, compared to his term of office as deputy clerk. That the duties of member of Assembly have to be performed at Albany, does not affect the question in this case, since there is an officer in New York to perform the duties imposed upon the deputy clerk of the Court of Special Sessions, and no more hazard to public interests is occasioned than in the very frequent cases where an assistant or deputy is left to exercise the powers of the principal officer in his absence.

"Neglect of duty by an officer, absence from the place where the duties of his office are to be performed, non-user of powers or abandonment, are not modes of vacating an office in this State, but if unjustifiable, are grounds for removing him from office by the proper authority. The rule in other States appears to be the same. In the case of *Page* v. *Hardin* (8 B. Mon. 648, 666, Kentucky), where the Secretary of State, in violation of an express statute, persistently absented himself from the seat of government, and left the performance of his duties to an assistant, it was held that he had not vacated his office. In the case of *Bernard* v. *City of Hoboken* (3 Dutch. 412), the fact that a local officer of that city left the State of New Jersey, went west, remained away for a considerable time, with some evidence of intention to stay away permanently, was held not to be at law a vacation of his office, but it was left to the jury to say if there were an intention on his part to relinquish or abandon it.

"In this State, the vagueness of the common-law rule has been in a measure limited by statute. A local office becomes vacant if the incumbent ceases to be an inhabitant of the district, county, town or city for which he shall have been chosen or appointed, or within which the duties of his office are re-

quired to be discharged (1 R. S. 122, sec. 34, subd. 4), and no other abandonment or relinquishment is provided for by law. There is, of course, no question of the authority of the proper tribunal to remove a local officer from office for non-performance or neglect of duy, even if such neglect arise from his acceptance of another office compatible with the first, such authority being always reserved for the public good. But the sole question before me now being whether the relator, by accepting the office of member of Assembly, thereupon absolutely vacated his office of deputy clerk of the Special Sessions, upon the ground that the two offices were incompatible, my conclusion is to the contrary.

"1st. Because there necessarily need be no neglect of duties of the office of deputy clerk for the short period that the relator might be required to be absent attending sessions of the Legislature, there being another officer present to perform all those duties.

"2d. The appointment by law of a clerk and deputy clerk, two officers of equal authority, to perform the same duties, one only being needed to perform them at one time, has in contemplation the absence at times of one of such officers, and evidences an *intent* that the personal presence of both is not all times necessary.

"3d. And for the further reason that the custom or usage in this State has been for local officers to hold as well legislative or *quasi* legislative offices, the duties of which are to be performed at the capital of the State. That such custom or usage is to be considered as authority for the practice has been shown above (*Rex* v. *Trelawney*, 1 Burr. 1615; *State of Missouri* v. *Moore*, 48 Mo. 242). Such custom in this State has been attended by a silence on the subject in the statutes which, according to the last case cited, evidences the approval of the Legislature, and must be considered in determining the question. Such usage follows that which has also prevailed in England, local officers there being elected to Parliament and special statutes having been enacted to provide what local officers shall not be eligible to serve in Parliament, all

other persons being eligible (Jacobs' Law Dict. tit. Parliament, 6 B).

" In this State not only have local officers, been elected to both houses of the Legislature, but there is even higher authority in the cases of certain local officers, accepting offices of a legislative character, the duties of which interfered with the performance of their local duties—I allude to the delegates to the several constitutional conventions of this State. In the convention of 1866–7, nearly one-fourth of all the delegates held local city, county or town offices of a judicial, legislative or executive character. The chief justices of the three superior courts in different counties of the State, other judges of the same courts (in one instance the whole bench) surrogates, justices of inferior courts, members of the boards of education, officers of city and county departments of different localities, were all members of that convention.

" In the convention of 1846 many delegates and local officers, and in the convention of 1821 the chancellor, was a delegate. In every case there was necessarily a suspension of the performance of other official duties during the very long sessions of the conventions, which extended over a longer period than a session of the Legislature. The duties of delegate were as multifarious and engrossing as those of members of Assembly, and had to be performed at Albany. There was necessarily loss of service to the public in the non-performance by such delegates of their local duties, especially in the case of judicial and other officers whose powers could not be delegated. If the argument of the respondent is correct, it follows that all these officers vacated their offices when elected to the constitutional conventions, since such offices were far more obnoxious to the charge of incompatibility than those held by the relator Ryan.

" 4th. The offices of the relator are not incompatible as having any such relation to each other as suggests that they could not be performed by the same person with honesty and impartiality. This was expressly conceded on the argument. It was also conceded that no inquiry was to be made into the performance by the relator of his local duties, while acting as member

of Assembly (Charter, L. of 1873, chap. 335, sec. 29). But the sole objection to the relator's claim is based on what the counsel for the respondent termed the 'physical incompatibility' of the relator's offices, arising from the assumed fact that the duties of each required his presence in different places at the same time.

"This question was considered by the Supreme Court at special term, on the application of the same relator for the same salary, and the learned justice who presided was of opinion that the offices were incompatible, but as that point had not been suggested nor argued by counsel before him, he gave leave for an alternative mandamus, in order that the relator's counsel might be heard upon it.

"The alternative mandamus has been applied for and issued from this court without objection, and the return made by the comptroller to the writ, raises the question here discussed, counsel having been fully heard upon the objection to the sufficiency of the return. The opinion delivered by the learned justice of the Supreme Court appears to hold that the relator's offices were incompatible, upon the *dictum* of Ashhurst, J., in *Millward* v. *Thatcher, supra*, and upon the assumed facts, that if the clerk fell sick, the presence of the deputy would be indispensably necessary to perform their duties in the court; that the statutes contemplated the existence of duties requiring the presence of both clerk and deputy for their effectual performance; that the duties of one office required the relator's presence in Albany, and of the other in New York, while both were to be discharged in person.

"As to the case of *Millward* v. *Thatcher*, the construction placed upon it by the English courts, and the weight it is entitled to, are discussed above. As to the contingency of the clerk falling sick, leaving no one to perform the duties of deputy clerk, it might arise in every case where duties are either personal or delegated, but can hardly, in the latter case, be urged as a reason why the officer and the deputy must always be present to anticipate each other's illness or incapacity to act personally in performance of the duties of the office. No officer could in that case ever absent himself or hold an-

other office, even while he had a deputy. Nothing in the language of the statute seems to me to intend that there are any duties for clerk and deputy to perform jointly, or requiring the presence of both. It would rather seem that the creation of the two offices, to perform duties which the incumbent of either can fulfill, contemplates the contingency of the occasional absence of one of them.

"Finally, no duties can require personal performance in every instance by any officer, when another person is clothed by law with full authority to perform them.

"It is with diffidence and reluctance that a conclusion is here reached differing from the views of the learned justice of the Supreme Court, but it has been my advantage to hear counsel discuss with care and elaboration the particular point in controversy. So far as the propriety of any two offices, compatible or incompatible, being ever held by one person at the same time is concerned (save in possible exceptional cases of extreme importance, where the interests of the State temporarily demand special experience and ability), it is impossible not to see the force of Coke's opinion; that it were better they should not be, as tending to the greater honor and dignity of office and greater benefit to the public. But my views as to the propriety cannot affect the law as I find it, and I must conclude that the relator did not vacate his local office by accepting that of member of the Legislature.

"The return is insufficient, and mandamus must issue." ·

The court therefore ordered a peremptory writ of mandamus to issue, and from that order the comptroller appealed.

*George P. Andrews,* for appellant.

*Richard O'Gorman,* for respondent.

ROBINSON, J.—The relator was deputy clerk of the Court of Special Sessions of the Peace for the city and county of New York in the fall of 1872, when he was elected a member of the Assembly for the year 1873, and accepted that office, and served in the same for the months of January, February, March and April of that year, and without having otherwise

resigned or been removed from his office of deputy clerk by the board of police justices, by whom he was appointed, and at whose pleasure he held that office (under the provisions of chapter 373 of the Laws of 1872), claims in this proceeding, by mandamus, to compel the comptroller to pay him his salary for those four months. The return of the comptroller alleges that the duties of the office of member of the Assembly required the relator's presence in the city of Albany, and rendered it impossible for him to perform those of the office of deputy clerk, which required his presence in the city of New York in order to perform the same; and that he was absent from the city of New York during those four months, in attendance on the Legislature, and did not perform the duties of deputy clerk during that time. The judge below, upon this return, directed a peremptory writ of mandamus to issue, requiring payment of the salary claimed for that period; and the questions presented on this appeal are, whether the relator, by accepting the office of member of the Assembly, and attending at Albany and there performing its duties, resigned the office of deputy clerk, or whether such absence from the city of New York, where his duties in the latter office were to be performed, disentitled him from claiming the salary attached thereto for the period of his absence at Albany, and non-performance of his official duties in New York.

The affirmative of both propositions is claimed, on the part of the comptroller, as well on the ground of the incompatibility of the offices, and the resignation of that of deputy clerk, by accepting that of member of Assembly, as well as of the omission to perform any of the duties appertaining to that of deputy clerk.

This office of deputy clerk was first created by chapter 282 of the Laws of 1858, in which the police justices were authorized to appoint both a clerk and deputy clerk of the Court of Special Sessions of the Peace; and by it, as well as by subsequent statutes (chap. 283 of 1870 and chap. 373 of 1872), the power of appointment was vested in other officers or board than the clerk, to whom, at common law, it would have appertained. "A deputy is he who exercises the office in another

man's right (Wood's Ins. 203); and "where one office is inci-
dent to another, such incident office is regularly grantable by
him who hath the principal office" (*Mitton's Case*, 4 Co. 32);
and so by statute 1 R. S. 116, § 5. The duties prescribed for
such deputy clerk by the act of 1858, chap. 282, § 2, do not
substantially vary from those imposed by general law upon any
deputy, which are as follows: "In cases not otherwise pro-
vided for, each deputy shall possess the power and perform the
duties attached by law to the office of the principal, *during a
vacancy and during the absence of his principal*" (1 R. S. 117,
§ 7). Otherwise the deputy is but an employee, to perform
clerkly duties, subject to the control of his principal, when
present to exercise the duties of the office. This consideration
does not, however, reduce him in the presence of his superior
to the position of a mere clerk, nor divest him of his contin-
uous character of an "officer," while remaining an incumbent
of his position, subject to all claims upon his services, in per-
formance of the duties of his principal, whenever the contin-
gencies provided for by the statute shall occur. The right of
an officer to his fees, emoluments or salary is such only as is
prescribed by statute; and while he holds the office such right
is in no way impaired by his occasional or protracted ab-
sence from his post, or neglect of his duties. Such derelictions
find their corrections in the power of removal, impeachment
and punishment provided by law. The compensations for
official services are not fixed upon any mere principle of a
"*quantum meruit*," but upon the judgment and consideration
of the Legislature as a *just medium*, for the services which the
officer may be called upon to perform. These may in some
cases be extravagant for the specific services, while in others
they may furnish a remuneration that is wholly inadequate.
The time and occasion may, from change of circumstances,
render the service onerous and oppressive, and the Legislature
may also increase the duties to any extent it chooses, yet
nothing additional to the statutory reward can be claimed by
the officer. He accepts the office "for better or for worse,"
and whether oppressed with constant and overburdening cares,
or enabled from absence of claims upon his services to devote

himself to his own pursuits, his fees, salary or statutory compensation constitutes what he can claim therefor, and is yet to be accorded, although he performs no substantial service or neglects his duties. It is different in the relation of master and servant, or employer and employee, wherein, if extra services are performed, not originally contemplated, additional compensation may be claimed, and for neglect of duty a *recoupment* from the wages agreed upon may be allowed. The fees or salary of office are "*quicquid honorarium*," and accrue from mere possession of the office. If therefore the relator, by accepting and performing the duties of member of Assembly, in no way resigned his office of deputy clerk, his neglect of the duties which the office required did not constitute a vacation of the office, nor deprive him of the right to his accruing salary, unless there was in law such incompatibility in the two that the acceptance of the office of member of Assembly operated as a resignation of that of deputy clerk of a local court. Incompatibility of office exists as well by force of the principles of the common law as of constitutional and statutory provisions. It only arises at common law, when the one office is *subordinate* or subject to the *supervision* or *control* of the other, and upon the principle that *one cannot both be master and servant, or principal and subordinate.* It did not arise from the mere physical inability of the incumbent to be constantly present and engaged in the business of each, or to be ready to perform simultaneously all the duties they respectively required. The learned judge, whose decision is appealed from, has industriously presented an exhaustive review of such cases as have arisen at common law in England and in this country, in which such question of incompatibility of office has arisen or been adjudicated upon, and has eliminated from them the principle above stated. Such are the cases of *Verrier* v. *The Mayor of Sandwich* (Siderfin, 353), where the offices were mayor and clerk in the same court; *Rex* v. *Pateman* (2 T. R. 777), those of alderman and town clerk, in which the aldermen were to audit the accounts of town clerk; *Dyer's Case* (Dyer, 158), of justices of the Court of Common Pleas and judge of the King's Bench, the latter being required by law to review and correct

errors in the decisions of the former; *Bissell's Case* (note to *Rex* v. *Goodwin*, 1 Doug. 397), of alderman and chamberlain, where also the aldermen were required to audit the accounts of chamberlain; *Millward* v. *Thatcher* (2 T. R. 82), of judge and clerk of the same court; *Rex* v. *Patterson* (4 B. & Ad. 9), of justice of the peace and county treasurer, required to render his accounts to the justices for audit; *Rex* v. *Lizzard* (9 B. & C. 421), of alderman and clerk removable by the aldermen, who also might vote upon his salary, in all which cases such incompatibility was held to exist; while, on the contrary, in *Rex* v. *Trelawney* (3 Burr. 1615) of those of capital burgess and steward, " a higher office " in the same corporation, " by usage both having been in the same person ; " in *Rex* v. *Jones* (1 B. & Ald. 667), of councilman and town clerk, who was to attend the meetings of the councilmen and record their proceedings, the offices were held compatible. So, also, in our State courts, in *Howland* v. *Luce* (16 I. R.), the offices of clerk and collector of the same school district; in *Missouri* v. *Lush* (48 Mo. 242), of county clerk and clerk of the Circuit Court, performance of the duties of which required attendance in different places, but each might be performed by deputy ; in *Bryan* v. *Cattell* (15 Iowa, 550), of district attorney and captain in the volunteer service of the United States, requiring absence from the county, were also held not to be incompatible. These afford a review of such as are decided on common law principles. There are others arising out of constitutional or statute provisions (2 Va. Cas. 523 ; 3 J. J. Marsh. 401 ; 21 Ind. 516).

The Constitution of our own State (Art. 3, § 7) prohibits any member of the Legislature *receiving* any civil appointment within this State or to the Senate of the United States, or from the Governor, Governor and Senate, or from the Legislature, during the term for which he shall have been elected. And Article 3 (§ 8) also prohibits any person, being a member of Congress, or holding any judicial or military office under the United States, from holding a seat in the Legislature; and if any person shall, after his election to the Legislature, be elected a member of Congress, or appointed to any office, civil or military, under the Government of the United States, his accept-

ance thereof shall vacate his seat. There are various statutes, relating as well to members of the Legislature as to other offices, inhibiting the holding or exercising the two (1 R. S. 103 ; Ib. 109, §§ 26, 27 ; Ib. 111, § 30 ; Ib. 112, § 48 ; Ib. 116, § 2 ; L. 1853, c. 80, and others), but none otherwise affecting those under consideration.

The provisions of our Constitution and laws, above referred to, affecting the office of a member of Assembly, are to a great extent in harmony with the acts of Parliament relating to members of that body. The statute 12 Wm. III, c. 2, prohibited any member who had any office or place of profit under the king or pension from the crown from serving as a member of Parliament; this was repealed by 4 Anne, c. 8; but 6 Anne, c. 7, § 25, enacted that no member of Parliament should hold any office in the government and sit in the house at the same time by virtue of his former election, "for by acceptance of an office his election is void;" but he might be elected again on a new writ sued out, and sit in the house. By 1 Geo. I, c. 56, no person having a pension from the crown *for years* could be elected a member; and by 15 Geo. II, c. 22, various officers of state were rendered incapable of being members. None of the judges who were assistants to the House of Lords in the decision of questions of law were eligible, but persons holding places in other courts were (Jac. Law Dic. "Parliament;" Cun. Law Dic. "Parliament;" 1 Bl. Com. 175).

A sheriff for another shire might sit in Parliament (Jac. Law Dic. *supra*), as was well maintained in the case of Lord Coke, who was nominated by Charles I to the office of sheriff of Buckinghamshire, under the idea that he would thereby, from the incompatibility of the offices, be precluded from election to Parliament. He, however, was elected from Norfolk, and although he faithfully executed the duties as sheriff, his right to his seat in Parliament was successfully maintained (4 Ld. Camp. Lives of the Chief Justices, 332–3 ; 2 Cobb Par. Hist. 41, 44).

The common and statutory laws of Great Britain existing in 1775 were adopted in our first Constitution of 1777 (1 R. S. 32), so far as applicable to the state and condition of our country. A subsequent change was entirely within the scope of

subsequent laws or constitutional provisions. Such as have been considered in no way prohibited one holding the office of deputy clerk of a local court from being also a member of the Legislature. The Constitution of 1846, in the provisions above referred to, considered the relations of a member to other offices, and while prohibiting his *acceptance* of other offices, it in no way provided against the holding of such a local office of which the member was previously an incumbent. Its provisions were directed against his acceptance of other offices after he became a member, and with a view to prevent the improper and corrupt influence which the hope or promise of such appointments might exert upon his conduct as a legislator. The novel condition of our own country, in its settlement and development, has occasioned the necessity for the holding of several offices by the same person, when he was deemed by the electors or appointing power capable and worthy of performing their various duties. An instance, not improbable, is stated in a recent publication as occurring in Florida, of the same person having united in himself the multifarious offices of " senator, county commissioner, member of board of instruction, deputy marshal, deputy sheriff, county clerk, treasurer of school funds, senior councilman, and acting mayor " (Harp. Mo. Mag. No. 257, April, 1874). The incongruity of such duties has not, however, been regarded as an incompatibility of offices, except where such incompatibility exists under some strict rule of the common law, or is created by the Constitution or laws, and necessarily arises from their construction as to the duties imposed upon the respective offices. Otherwise, whatever evils have arisen or could arise from any individual holding a multiplicity of offices have found their remedy or correction in the discretion or judgment of the electors or appointing power. When such various honors are thrust or conferred upon the same person, and he accepts them, he takes them subject to all their duties, and becomes entitled to all the benefits legally to be derived from their possession. By the ordinary rule of construction, embodied in the maxim " *Expressio unius est exclusio alterius*," the peculiar prohibitions of the Constitution and provisions of the Revised Statutes against a member of the Legis-

The People v. Green.

lature *accepting* other specified offices should (especially where not otherwise controlled by common law) be deemed an affirmation of his right to hold others not so prohibited, and to leave his enjoyment of such offices to the discretion and responsibility of the electors or appointing power, or those authorized to effect his removal, and by whose indulgence he may be permitted to retain office, without impeachment for neglect of his duties.

The power of the Legislature, of which the relator was a member, to pass laws affecting his local office did not create any incompatibility of office. All citizens, in office or otherwise, are equally subject to the action of that body; and whatever may be the personal interest of the legislator in the subject of legislation, he is not (aside from matters of delicacy or personal honor) precluded from taking part in its deliberations or acting upon the subject. In the present case, the judge from whose decision this appeal is taken has instanced the attendance of numerous judges and officials, including the chancellor, as delegates in the conventions that framed the Constitutions of 1821 and 1846, acting and deliberating on the very existence of the offices they held, their own powers, and all other incidents of their offices, without imputation of incompatibility, and far less of any legal or moral impropriety.

Such high expositions of the practice and law upon this subject can scarcely leave a doubt that the office of the relator as a member of the Assembly was in law *compatible* with that of deputy clerk; that his temporary absence from the city at Albany, during the session of the Legislature, did not in itself constitute a resignation of his local position; that for any neglect of duty his removal could only have been effected by the action of the board of police justices, at whose will and pleasure he held the office; and that, in the absence of their action, he continued to hold his office of deputy clerk, with all its emoluments.

Upon these considerations, I am for affirmance of the order awarding a peremptory *mandamus*, with costs.

DALY, Ch. J., and LARREMORE, J., concurred.

Order affirmed.