In the Matter of the Application of VAN R. W. LUCE, Petitioner, for the Removal of ALFRED F. BEITER, Respondent, as Supervisor of the Town of Amherst, County of Erie, N. Y.

Fourth Department, June 2, 1933.

*Philip Halpern* and *George Clinton, Jr.,* for the petitioner.

*Henry W. Killeen* and *Francis J. Maloney,* for the respondent.

CROSBY, J.   This is a proceeding brought to remove Alfred F. Beiter as supervisor of the town of Amherst, Erie county, under section 36 of the Public Officers Law, the claim being, in substance, that by being elected to Congress, and by accepting the office of Congressman, he has placed himself in a position where he is practically compelled to neglect his duties as supervisor. Specifically he is charged with being absent from three meetings of the town board (on March sixth, eighteenth and twentieth, respectively) and also from three meetings of the board of supervisors (on March fourteenth, seventeenth and twenty-first, respectively), and he is also charged with having left, with his confidential clerk, checks signed in blank to be used by said clerk in paying certain bills of the town.  After hearing the testimony of respondent and the witnesses for and against him, in open court, it seems that the filling out and delivering of the checks in question were intrusted to a competent person, who is an employee of the town and an officer of the bank in which the town funds are kept, and that such checks have been used to pay only bills properly audited or else regular payroll charges as they came due.  And it has not been made to appear that the few absences from town and county board meetings have resulted in any inconvenience or loss to the municipalities concerned.

The people of his town elected the respondent to the office of supervisor and the people of his congressional district elected him to Congress.  No statute and no provision of the Constitution forbids any person to hold both offices at once.  No dishonesty or moral dereliction of any kind has been shown.  And, while it might well be better for a person elected to so important an office as member of Congress to resign from a town office, his neglect of the duties of the office of supervisor, and the irregular issuance of the checks do not seem, thus far, to have been of so serious a character as to justify judicial determination that he has been guilty of " misconduct, maladministration, malfeasance or malversation in office " within the meaning of section 36 of the Public Officers Law.

Where, as here, a question of degree is involved it is always difficult to draw the line of differentiation. All we say, therefore, is that in our opinion the respondent's conduct, while subject to criticism, is not such as to merit the condemnation of removal.

The proceeding should be dismissed, without costs.

All concur, except TAYLOR and THOMPSON, JJ., who dissent and vote for granting the petition in an opinion by TAYLOR, J.

TAYLOR, J. (dissenting). In November, 1929, respondent was elected — and in 1931 re-elected — supervisor in and for the town of Amherst, Erie county, and is now holding the office at an annual salary of $4,850. In November, 1932, he was elected a member of Congress in and for the forty-first congressional district and is now holding that office, at an annual salary of $10,000, plus perquisites. Section 36 of the Public Officers Law reads, in part, as follows: " Any town or village officer, except a justice of the peace, may be removed from office by the supreme court for any misconduct, maladministration, malfeasance or malversation in office."

The Erie county board of supervisors and the town board hold regularly scheduled meetings, adjourned meetings and special meetings. A supervisor is the chief fiscal officer of his town and his duties as such and as a member of the town board are many and varied. (Town Law, §§ 98, 99, 149-c, and art. 6.) It is charged in this proceeding for removal of respondent that he has been absent from three meetings of the board of supervisors, and from three regularly adjourned meetings of the town board, of which he is a member *ex officio* (Town Law, § 131), not because of illness or other valid excuse, but deliberately and for no stated reason other than that he was in Washington performing his duties as a Congressman. Respondent had ample notice of these meetings. It is also charged that he left numerous checks in charge of his clerk for payments to be made to persons on the town payroll and for payments of warrants drawn by the town clerk, each check having been signed by respondent and at time of delivery to the clerk containing the name of no payee or the amount to be paid. The Town Law (§ 98, subd. 3, as amd. by Laws of 1921, chap. 452) provides that a supervisor " shall pay out such [town] moneys only by checks payable to the person entitled thereto." None of these charges is denied, but the excuse is offered that no duties of importance as supervisor were neglected and that the respondent was absent from the specified meetings because sessions of the Congress of the United States required him to be in Washington.

I know of no provision of Constitution or statute prohibiting a person from holding at the same time the two offices mentioned.

Section 81 of the Town Law does not declare a Congressman to be ineligible to the office of supervisor, nor are the two offices "incompatible" in that one is subordinate or subject to the control or supervision of the other so that the acceptance by respondent of the office of Congressman *ipso facto* constituted a vacation of the office of supervisor. (See *People ex rel. Kelly* v. *Common Council,* 77 N. Y. 503; *People ex rel. Gilchrist* v. *Murray,* 73 id. 535; *People ex rel. Ryan* v. *Green,* 5 Daly, 254; revd., on other grounds, 58 N. Y. 295.) But this is not saying that the two offices under consideration are not incompatible in the sense that neglect to perform the duties of the one because of the physical absence of the incumbent in the performance of the duties of the other cannot be ground for removal from that office by the constituted authority. In the opinion at Common Pleas in the case last cited (5 Daly, at p. 273), while it is stated that relator's temporary absence at Albany as a member of the Legislature did not of itself constitute a resignation of his position as deputy clerk of the Court of Special Sessions in New York city, it is clearly intimated that for such neglect of the duties of the latter office relator might be removed from it by the designated authority.

We are, of course, not assuming to pass upon the right of respondent to serve as a Congressman. But inasmuch as duplication of office-holding furnishes the excuse for respondent's alleged neglect of his duties as supervisor, such duplication is involved in this proceeding. If the performance of the duties of a salaried public officer be interfered with by duties resulting from his holding at the same time another salaried public office subsequently acquired from another and larger constituency, governmental efficiency and due appreciation of official obligation require that such interference should be dispensed with by resignation or removal from the one or the other office. It is begging the question to say that the work to be done at the meetings which respondent missed was unimportant. His incumbency as supervisor required him to attend these meetings and to perform all his duties as supervisor, unless prevented by causes other than the one announced. And this is not a case of an isolated or incidental neglect of duty. Respondent has in the half-dozen stated instances willfully absented himself from meetings — and by the testimony given by him in the hearing granted by this court there is discovered an intention of respondent to continue to make his performance of his duties subordinate to his performance of congressional duties. Following are some excerpts from respondent's testimony: "Q. Did you give notice of your intended absence to either of these Boards? A. No, sir. Q. How much of the time when you were at home did you usually spend

in the office in the village hall at Williamsville? A. I usually spent the major portion of my time there at office hours. * * *. Q. You don't get fees the way some supervisors do? A. No, sir. Q. What is the salary? A. $4,850 a year. * * * Q. In your letter of March 23rd, you stated that you intended to return to the town's general fund your salary as supervisor from the town? A. Yes, sir." The last answer manifests an appreciation by respondent that he has not done his duty as supervisor, as well as an intention to neglect his duties as such in the future.

With respect to the checks signed in blank the respondent testified as follows: " On February 27th the suggestion was made to me by my clerk that possibly it would be well for me to sign a few checks for the payroll so that we won't take any time. Knowing the number of town employees I did sign some checks, and on the following morning before my departure [for Washington] I handed them to my secretary and instructed him to fill them in as per the payroll. Q. Did you give him instructions as to where he should keep these checks? A. I did not. By virtue of his being secretary for the past three years, I knew he would, without instructing him, put them in the town safe where they belonged. Q. Did you give him any instructions about them? A. Just to be used for the payroll; that was the understanding. Q. You didn't fill in the names of the town employees to whom they could have gone? A. Not prior to signing, no, sir. Q. You did not protect them by any notation as to a limitation in amount? A. No, sir. Q. He didn't suggest that to you, and you didn't think of it probably? A. No, I didn't think of it."

To the charge that this was official misconduct and malfeasance the answer is that no harm was done, since the checks, with proper amounts written into them, eventually came into the hands of their proper payees. Is this answer sufficient? If the night watchman leaves the outer door of the warehouse open and absents himself for the night, has he done his full duty because no eavesdropper has stolen goods from the warehouse? A sleeping watchman (and a fortiori an absent watchman) is not a watchman. (Govendy v. Auto Ins. Co. of Hartford, Conn., 239 App. Div. 882.)

The power given this court by legislative enactment to remove a public officer elected by the people should not be utilized without good cause. But removal should follow clear and deliberate violation of public duty and should not be compelled to wait on long-continued repetition or advanced degrees of misconduct. The statute does not specify a degree of remissness which shall be a sine quo non. Its words should be given their ordinary signification. The admitted factual charges and the testimony of respondent at

the hearing before this court indicate a course of past conduct — to say nothing of likely future conduct — which clearly come within the intendment of section 36 of the Public Officers Law.

This court is not interested in the motives which may be behind this proceeding, nor do we who vote for removal base our vote upon ethical considerations. The charges and the testimony given at the hearing indicate misconduct, maladministration and malfeasance within the purport of the statute. " Public office is a public trust," and he who deliberately neglects that trust obligation without just cause is not entitled to stewardship. No penalty other or less severe than removal is provided. Therefore, the prayer of the petitioner should be granted and the respondent removed from the office of supervisor of the town of Amherst.

THOMPSON, J., concurs.

Proceeding dismissed, without costs.