SUPREME COURT

THE PEOPLE *ex rel.* ISAAC FULLER agt. THE BOARD OF SUPERVISORS OF SENECA COUNTY.

Where a board of supervisors by ballot, under the statute (*Laws of* 1845, *chapter* 280), designate, by the highest number of votes, one *newspaper* in their county for the publication of the laws of the legislature, and, on another ballot, for the designation of a *second newspaper* for the same purpose, there is a *tie vote* in reference to two other newspapers voted for, there is a selection of one newspaper only; and a *resolution* of the board, declaring one of the two papers last voted for as a second paper to publish the laws, does not help out the difficulty; nor is a *mandamus* against the board of any avail. The defect in such case is in the statute.

*Seneca Circuit and Special Term, January,* 1860.
MOTION for a peremptory mandamus.

J. K. RICHARDSON, *for relator.*
S. G. HADLEY *and* J. T. MILLER, *for Supervisors.*

KNOX, Justice. The questions in this case arise in this way. In 1845 (*see Laws of* 1845, *chap.* 280,) the legislature passed the following law: "Section 1. All laws of a general nature, which shall hereafter be passed by the legislature of this state, shall be published in at least two newspapers in each county

of this state where there is, or may be hereafter, two newspapers published; and in one newspaper in each county where but one newspaper is published, or may be published."

" Section 2. All laws of a local nature, which shall hereafter be passed by the legislature of this state, shall be published in like manner in each of the counties interested in the same."

" Section 3. It shall be the duty of each board of supervisors in the several counties of this state, at their annual meeting, to appoint the printers for publishing the laws in their respective counties. The appointment shall be made in the following manner: Each member of the board of supervisors shall designate, by ballot, one newspaper printed in the county to publish the laws, and the paper having the highest number of votes, and the paper having the next highest number of votes, shall be the papers designated for printing the laws. If there shall be but one paper printed in the county, then, in that case, the laws shall be published in that paper."

At their annual meeting, held on the 25th day of November last, the board of supervisors of Seneca county, for the purpose of designating the papers to print the laws as provided in the sections just quoted, proceeded as follows: " Each member of said board, viz., John De Mott, Myron R. Cole, William Dunlap, Peter J. Van Vliet, William Burroughs, John Reed, Samuel R. Welles, George W. Davis, Robert L. Stevenson and Albert Rogers, did designate, by ballot, one newspaper printed in said county. That said ballots were canvassed, after being cast, by said respective members of said board, and on such canvass it appeared, and was declared and determined by said board, that four of said ballots designated the *Seneca Observer*. That three of said ballots designated the *American Reveille*, and that three of said ballots designated the *Seneca County Courier*. That no other ballot was taken, but a resolution was thereupon adopted by a majority of the members of said board then and there voting, and constituting a quorum of said board, as follows: " Resolved, that Charles Sentell and Messrs. Holly and Stowell be, and are hereby appointed, the printers to publish the session laws in said county the ensuing year, and that

the *Seneca Observer* and *American Reveille*, are hereby designated as such papers in which such laws shall be published."

The relator, assuming the ground that the board had not complied with the statute, and had not appointed printers to publish the laws, or designated any paper or papers for printing the laws, but had adjourned without so doing—an alternative mandamus was ordered by me, at the Cayuga circuit and special term, on the 3d day of January instant. And now, on filing the return of the board, which sets forth the facts above stated, the relator, with the consent of the counsel for the board, without further notice, moves for a peremptory writ of mandamus.

The objections which the counsel for the board take to the issuing of the writ are substantially these : 1st. That, the relator, as the publisher and printer of a newspaper, has no right to the writ any more than any other citizen of the county. 2d. That the board of supervisors have complied with the law, and have appointed printers of the laws. That, having once taken a ballot for that purpose, they have spent their power, and cannot again act in reference to it. 3d. That the mode of proceeding to elect printers is merely directory.

As to the first point, I am of opinion that the relator has no right, as printer and publisher of a newspaper in Seneca county, to the writ any more than all the citizens of the county, but I think any citizen has the right to it in a case like the present. The object of the statute undoubtedly is, to give such publicity to the laws that every citizen may have an opportunity to know them. Any citizen, therefore, may be a relator, in such an application for a mandamus, to enforce the execution of an act of the legislature, passed for the benefit of the public. (19 *Wendell*, 65 ; 1 *Howard P. R.* 186.)

The case relied on by the counsel for the board, *Yates* agt. *The Canal Board*, (13 *Barbour's S. C. Rep.* 432), does not sustain their position. That was the case of an individual asking for a mandamus to the canal board, commanding them to approve or disapprove of a contract which had been awarded to him. It was a matter of interest to Yates, the relator individually, but the public at large were not interested in it.

But the question whether the laws of the land, which all are bound to obey, and the ignorance of which excuses no man, shall be published as directed by the legislature, is a matter of public right. As to the other objections, I have had more difficulty in ariving at a conclusion, and yet, after reading carefully the statute, I am just as confident that the board of supervisors have not discharged the "duty" which the statute imposes, as I am that the relator has a right to the writ. I know of no statute which gives the board of supervisors the power to cause the laws to be published, or to appoint the printers for that purpose, except the one under which they acted in the present instance; and no other statute giving such power was cited on the argument, though one of the counsel for the board earnestly contended that they have such power. This statute is, of course, to be read as a whole, and the same statute which provides that the laws "shall be published," provides that the supervisors *shall* appoint the printers, and prescribes in what manner that appointment shall be made. It can, therefore, be done in no other manner, and, hence, an appointment by *resolution* is an utter nullity. The manner prescribed is, "each member of the board of supervisors shall designate, by ballot, one newspaper printed in the county, to publish the laws, and the paper having the highest number of votes, and the paper having the next highest number of votes, shall be the papers designated for printing the laws."

Here it may be proper to observe, that the statute, after providing that the board may appoint, and prescribing the "manner," says: "And the paper having the highest number of votes, and the paper having the next highest number of votes, shall be the papers designated," &c. In other words, though the supervisors must vote by ballot, the *statute* declares who is elected or designated by such ballot. Now, how was it in this case? The supervisors did precisely what the statute said they should do. They followed the "manner prescribed, and the ballot showed *four* votes for the *Observer*, and *three* votes for the *Reveille*, and *three* votes for the *Courier*." The statute then spoke and said: "The *Observer*, having the highest num-

ber of votes, is one of the papers designated, but there is no paper having the next highest number, but there are two other papers having an equal number—there is a tie.   Neither having the next highest number of votes—neither is designated."

As the resolution which the board passed was a nullity, so far as it assumed to designate the papers, it seems to me clear that the " duty " of the board to appoint the printers has not been complied with.   And now the question arises, shall a peremptory mandamus go to compel the performance of that "duty?"   And just here I ask, whose fault is it that that " duty " was not performed?   Did the individual members of the board do anything which they had no right to do?   Had they not the right to vote as they did?   Most clearly they had, and are without fault.   Were in the discharge of their duty, voting, doubtless, as they pleased, and certainly there is no power anywhere to make them vote differently.   But as printers were not appointed, there is fault somewhere.   That fault is in the law itself—and nowhere else.   The " *modus adjendi*," prescribed by it for the election of the printers, cannot, in a case like the present one, do it.

When the act was passed, but two great political parties were in the field, and policy dictated the propriety of dividing between those two parties the public printing.   By this means, greater circulation would be given to the laws.   But since then another party has arisen, and hence the contingency, not contemplated by the statute, which has produced this "dead lock."

Now, this is a writ which the court will issue or withhold in its discretion, and, in the exercise of that discretion in this case, I shall withhold it.   It is the fault of the statute that printers are not elected, and it is quite plain to me that, if it were issued, the object sought could not be accomplished.

*First.* Because I have reason to believe that the members of the board would vote precisely as they have, and then we should have this same " dead lock ;" and, *Second.* Because I do not see how, now, after one paper has been designated, as I hold the *Observer* has been, that another can be.

I shall refuse the writ, but without costs to either party.