1879.]   THE PEOPLE ex rel. KELLY *v.* COMMON COUNCIL.   503

Statement of case.

THE PEOPLE ex rel. THOMAS KELLY, Respondent, *v.*
THE COMMON COUNCIL OF THE CITY OF BROOKLYN,
Appellant.

| '77 | 503 |
| 129 | 366 |

A representative in Congress holds a "public office," within the mean-
ing of the provision of the charter of the city of Brooklyn (§ 5, title 2,
chap. 863, Laws of 1873), which prohibits an alderman from holding
"any other public office," save as excepted, and declares that by an
election to and acceptance of "such public office" during his term as
alderman, "his office as such alderman shall immediately become
vacant."

Accordingly *held,* where an alderman of said city was, during his
term, elected representative in Congress and accepted such office, that
thereby his office as alderman "immediately" became vacant, and he
was no longer alderman *de jure* or *de facto;* that no direct judicial pro-
ceeding was necessary to determine his title; that the common council
were charged with no judicial duty to determine the question, but it
was their duty to order a special election to fill the vacancy as prescribed
by said provision.

A *quo warranto* will only lie where the party proceeded against is either
a *de facto* or *de jure* officer in possession of the office, and where the
facts are in dispute.

Also *held,* that proceedings by mandamus, on the relation of a resident and
elector of the ward, were proper to compel a performance by the com-
mon council of their duty in this respect.

Also *held,* that an allegation in the affidavit of the relator in such proceed-
ings, that he was a resident and elector, was not put in issue by a denial
on information and belief.

Also *held,* that the court, upon granting the writ, was justified in fixing
the time for the election.

(Argued June 3, 1879; decided June 10, 1879.)

APPEAL from order of the General Term of the Supreme
Court, in the second judicial department, affirming an order
of Special Term which directed the issuing of a peremptory
writ of mandamus, requiring defendant to order a special
election to be held on or before April 18, 1879, by the
electors of the twelfth ward, in the city of Brooklyn, to fill
a vacancy in the office of alderman of said ward, caused by
the acceptance by the incumbent of that office of the office
of representative in Congress.

The facts appear sufficiently in the opinion.

*William C. De Witt*, for appellant. O'Reilly was an alderman *de facto* and *de jure* of the city of Brooklyn. (*People* v. *Fruger*, 24 Barb., 341, 348; *People* v. *Com'rs High.*, 7 Wend., 474; *People* v. *Suprs. of Sullivan Co.*, 56 N. Y., 249; *People* v. *Suprs. of Ulster*, 32 Barb., 473; *People* v. *Contracting Bd.*, 20 How. Pr., 206; *People* v. *Cook*, 4 Sel., 89; *People* v. *Bartlett*, 6 Wend., 422; *People* v. *White*, 24 id., 525–539–544; *People* v. *Evert*, 1 Hill, 674; *People* v. *Stephens*, 5 id., 616; *People* v. *Hopson*, 1 Denio, 575; *Weeks* v. *Ellis*, 2 Barb., 324; 3 Burns Ald., 266–270.) A representative in the Congress of the United States is not a public officer. (Bayard, Cong. Globe 36, Jan. 19, 1864, app. ; 1 R. S. 6 [ed. Buks], 88, § 8; *Impeach. of Blount*, Am. Cong., 5 Cong. 1777–1779, vol. 2., 203, 108.) The question of O'Reilly's title to the office cannot be determined except by direct judicial proceedings, to which he is a party. (*Foot* v. *Stiles*, 57 N. Y., 399.) A mandamus will not lie. (Dillon on Munic. Corp., §§ 680, 714; *People* v. *Mayor*, 3 Johns. Cases, 79; *People* v. *Stevens*, 5 Hill, 616; *People* v. *Stevens*, 2 Abb. Pr. [N. S.], 348; *People ex rel. Dolan* v. *Lane*, 55 N. Y., 217; *Frost* v. *Mayor*, 5 Ellis & B., 530; Eng. L. R., 8, 9; *Queen* v. *Plaffer & Ricketts*, 7 Ad. & El., 966; *Mayor* v. *Romauter*, 47 Wisc., 547.) If this court has jurisdiction, the only remedy is by *quo warranto*. (Dillon on Munic. Corp., § 714.) It is the only remedy by which a title to office can be tried. (*Mayor* v. *Conover*, 5 Abb. Pr., 171.) It is the remedy prescribed by statute. (2d ed. Stat. at Large, 602; *Lewis* v. *Oliver*, 4 Abb. Pr. 121.) This court has no jurisdiction. (*In re Kalbfleisch*, 62 N. Y., 457; *People* v. *Metzger*, 47 Cal., 524.) The thirty days allowed by the charter for calling a special election not having expired when the order of the Special Term was made, no mandamus could then have been had. (Law 1873, 1297, § 5.)

*Roger A. Pryor*, for respondent. If the office of alderman for the twelfth ward be vacant, the duty of the com-

mon council to order the election is unequivocal, absolute and imperative. (*People* v. *The Board,* 51 N. Y., 401; *People* v. *The Com. Council,* 22 Barb., 404; *People* v. *Connolly,* 4 Abb. [N. S.], 376.) The duty being absolute, if the office be vacant and the common council in default, the power of the court to compel the ordering an election by mandamus is clear and incontrovertible. (*People* v. *Albany,* 11 Abb. [N. S.], 4; *State* v. *Com. Council,* 4 Vroom. [N. J.], 110; High on Extra. Leg. Rem., § 401; 2 Dillon on Munic. Corp., § 675; Tapping on Mandamus, 165; *People* v. *Com. Council,* 3 Keyes, 81; *People* v. *Com. Council,* 22 Barb., 404; *People* v. *Cummins,* 72 N. Y., 433.) O'Reilly's acceptance of the office of representative in Congress, *ipso facto* and *eo instanti* vacated his office of alderman. (*People* v. *Carrique,* 2 Hill, 93; *People* v. *Nostrand,* 46 N. Y., 381; *People* v. *Green,* 58 N. Y., 304.) Within the meaning and operation of section five, title two of the charter, a representative in Congress is a "public officer." (*People* v. *Hayes,* 7 How., 248; *People* v. *Nostrand,* 46 N. Y., 381; *People* v. *Nichols,* 52 id., 184; *Matter of Ryers,* 72 id., 5; *Connor* v. *Mayor,* 5 N. Y., 295; Brougham on British Const., chap. 3; G. C. Lewis' "Use and Abuse of Political Terms" [Wilson's ed.], 104; Cushing's Law and Practice of Legislative Assemblies, part 4, chap. 1, § 2; De Tocqueville on Democracy in America, chap. 7.) O'Reilly was an alderman *de facto.* (High Extr. L. R., § 401; 2 Dillon, § 674; *Rochester* v. *Bank,* 60 Barb., 234; *People* v. *White,* 24 Wend., 535; Willcock on Mun. Corp., 362, § 58; 14 L. L., 197.) To warrant the writ an actual refusal to order or hold the election is not necessary. (High, § 401; Tapping on Mand., 179; 2 Dillon, § 675; *State* v. *Com. Coun.,* 4 Vroom., 110; *People* v. *Albany,* 11 Abb. [N. S.], 4; *Comm.* v. *Comm.,* 37 Penn. St., 237.)

Danforth, J. On the 26th day of March, 1869, the relator upon affidavit applied to the Special Term of the Supreme Court for an order that the common council of the

city of Brooklyn show cause why they should not be required
to call an election to fill a vacancy existing as was alleged in
the office of alderman from the twelfth ward. He stated
that he was a resident and elector in that ward, and set out
so much of the charter of the city as provides that "no alder-
man shall during the term for which he is elected hold any
other public office except that of notary public or commis-
sioner of deeds," and declares that "if any alderman elected"
under its provisions "shall be appointed or elected to and
accepts such public office  *  *  *  after his election or
during his term of office as such alderman, his office as alder-
man shall immediately become vacant and his place shall be
filled by a special election to be ordered within thirty days
thereafter by the common council to be held by electors of
the ward in which he shall have been elected,"— and states
that Daniel O'Reilly was in November, 1877, elected alder-
man from that ward — that while he was such alderman, and
in November, 1878, he was elected representative in Con-
gress for the second congressional district of this State —
accepted the office and on the 18th day of March, 1879,
entered upon the discharge of its duties — that by reason of
this election and acceptance, the office of O'Reilly as alder-
man immediately became vacant and so continues — that no
election to fill the vacancy has been ordered, by the common
council, and although notified by the mayor of the city and
requested to order an election pursuant to law to fill the
vacancy they refused to do so. The order to show cause
was granted, and the common council answered thereto.
They do not deny the matters of fact above stated as to
O'Reilly and his several elections and acceptance as above
stated, but do deny that his office of alderman thereby
became vacant, because they say that although are presen-
tative in Congress he does not thereby hold "another public
office." The court at Special Term held otherwise, and
made an order that a peremptory writ of mandamus issue
commanding the common council forthwith to order a special
election to fill the vacancy. That order having been affirmed

by the General Term has been taken to this court.   The case has been presented by the counsel for the appellant with unusual ingenuity, but he has not satisfied us that the decision of the court below is wrong.

At the foundation of his argument is the assertion that " a representative in the Congress of the United States is not a public officer." The statement of this proposition would seem to carry its own refutation, but it has been argued with zeal and apparent confidence and is to be considered. He urges in its support that the Constitution of the United States does not class it among the offices of the government of the United States — this may be conceded.   He also says that the Constitution of our State does not so regard it, but excludes it from offices, meaning, as I understand the statement, offices of the United States.   This also may be conceded, for neither proposition affects the question before us.   Admitting that a representative in Congress is not regarded as an officer of the United States, by the instruments referred to, it by no means establishes the assertion that the representative does not hold a public office within the meaning of the charter.

We are to construe its provisions according to the ordinary sense of the words used (*Newell* v. *The People,* 7 N. Y., 97), and giving to them their natural and obvious signification and import there can be no doubt as to the meaning of each clause in question here.   The House of Representatives stands in the place of the whole body of the American people.   The scheme of representation being a substitute for a meeting of the citizens in persons — but each member of the house exercises legislative power, although as the defendant claims " the people may be deemed present in making the laws."   Mr. O'Reilly has therefore a trust or charge conferred by authority, for a public purpose, and by his acceptance has undertaken to perform the duties which the law prescribes for such employment.   He holds a public office although his dependence is upon the people.   BEST, Ch. J., in *Henly* v. *The Mayor of Lyme* (5 Bing., 91), answering

the question " what constitutes a public officer," says : " In my opinion every one who is appointed to discharge a public duty and receives a compensation in whatever shape, from the Crown or otherwise, is constituted a public officer." Said SANDFORD, Chancellor, in the *Case of Wood,* 2 Cowen, 1, note page 30 : The terms " office and public trust have no legal or technical meaning distinct from their ordinary signification. An office is a public charge or employment, and the term seems to comprehend every charge or employment in which the public are interested." Within these and all other definitions of the same words, when Mr. O'Reilly accepted his place as member of the House of Representatives, he took " office." (*People ex rel. Henry* v. *Nostrand,* 46 N. Y., 375.)

But the learned counsel for the appellant contends that the terms of the charter must be confined in their interpretation to those offices which are within the sphere of State cognizance — and that the words " other public office " therein used should be construed " to mean an office within the purview of State legislation." There are certainly no words of exclusion. The language is general and comprehensive, and if not so, does, by necessary implication, bring within its operation the office in question, for such an office is within the mischief, to prevent which the statute was passed — and must be deemed to have been in contemplation of the law makers. We may, however, adopt his argument and find the condition complied with in the very language of the statutes of the State — where " the representative in Congress" is styled an " officer," and the position which he holds — an " office." 2 Revised Statutes, part 1, title 2, chapter 6, section 1 defines general elections to be " such as are held at the same time * * * for the election of certain ' officers,' naming among others ' representatives in Congress.' " Section eight provides for filling at special elections " all vacancies in the office of representative in Congress," etc., and declares that " when the term of service of any such officer will expire at the end of the year during which the

1879.]    THE PEOPLE ex rel. KELLY v. COMMON COUNCIL.    509

Opinion of the Court, per DANFORTH, J.

vacancy in his 'office' shall occur   *   *   *   the usual election shall be held for a new 'officer.'"   "The ballot indorsed Congress shall contain the names of the persons designated for the *office* of representative in Congress" (title 4, art. 2, § 14); and the same appellation is used in section sixteen, speaking of a vacancy "in the *office* of such representative;" and title 5, article 1, section 7 prescribes a statement to be made of votes given "for the *office* of governor, * * * representative in Congress," etc.; and by section 21, article 2 the county clerk is to record the certificate of votes for "the *office* of representative in Congress;" and by section 44, article 5, title 5, "if either of the persons chosen shall have been elected to supply a vacancy in 'the *office* of representative in Congress,'" etc.   Chapter 6, title 6, article 1 treats of the election of members of Congress, and provides for notice to the secretary of State if a vacancy shall occur by death in the "office of representative in Congress," etc.; and the same phraseology is used in the acts of 1842, chapter 130, and 1847, chapter 240, relating to elections.   It follows then that to Mr. O'Reilly has happened that event which makes his office of alderman "vacant."   Such is the plain and emphatic language of the statute, and it is therefore unnecessary to consider, as the learned counsel for the respondent asks us to do, whether the duties of alderman to be performed in the city of Brooklyn can be fairly attended to by one who has been delegated by a larger constituency to render service by personal presence in the city of Washington.   The office is vacant by operation of law.   It became so "immediately" upon his election to and acceptance of the office of representative.   (Charter of Brooklyn, above cited, *People ex rel. Whiting* v. *Carrique*, 2 Hill, 93; *People ex rel. Henry* v. *Nostrand*, 46 N. Y., 381; *People ex rel. Ryan* v. *Green*, 58 id., 304.)

The defendants claimed, however, in their return, that "the right to order a special election depends on the title of said O'Reilly as alderman *de facto* to said office," and that this question is now under consideration by them.   They are

charged with no such judicial duty, and in assuming it they meddle with functions that do not belong to them.    Nor is there any force in the contention of their counsel that the title of O'Reilly to the office " cannot be determined except by direct judicial proceedings to which he is a party."    The moment he accepted the new office the old became vacant. His acceptance of the one was an absolute determination of his right to the other, and left him " no shadow of title, so that neither *quo warranto* nor a motion was necessary." (*People ex rel. Whiting* v. *Carrique*, 2 Hill, 93–97; Dillon on Mun. Cor., § 164, and cases cited, note 1.)    These cases also show that this would be so at common law and independent of the statute.    He was no longer alderman *de facto* or *de jure*.    The plea of plenarty, on which the appellant's counsel insists, or that the office was " full of him," and which is also set up in the answer to this proceeding, is in no sense well founded.    It cannot be sustained even by a legal fiction.    The office was and is as vacant as if Mr. O'Reilly had never been born; his removal is as complete as if caused by death.    When he accepted the new office the other ceased to have an incumbent.    It was not a case, therefore, for *quo warranto*, for that will lie only when the party proceeded against is either a *de facto* or *de jure* officer in possession of the office (*King* v. *Corporation of the Bedford Level*, 6 East., 368), and an office that is vacant is in possession of no one.    Besides, such writ issues when facts are in dispute, and one object aimed at is to ascertain the facts ; here no fact is disputed, but a mere question of law.

It was therefore the duty of the defendants to order a special election.    As to this the charter is imperative (*section* 5 [*supra*]), and furnished the only rule for their official conduct ; they had no right to question it, or do otherwise than obey.    It was their duty also to make the order at such time as would enable the electors of the ward " to fill his place " within thirty days after the vacancy occurred.

Having as the return concedes failed in the performance

of this duty, and in reply to the order to show cause set up only that the office was not vacant, the writ of mandamus was properly issued. (Dillon on Municipal Corporations, 674; *Lamb* v. *Lynd*, 44 Penn. St. Rep., 336; *The State ex rel. Hanner* v. *The Common Council of Rahway*, 33 N. J. [L. R.], 110; *Note to Fish* v. *Weatherwax*, 2 Johns. Cases, 217–221; *People* v. *Town of Fairbury*, 51 Minn., 149.)

Nor is the objection tenable that the relator has no standing in court. His affidavit on which the application for the order to show cause was made states explicitly that he is a resident and elector of the "twelfth ward." The return does not put this in issue by a positive denial but on information and belief only. This is not enough. (*People* v. *Norton*, 12 Abb. Pr. Rep. [N. S.], 47, 87.) The return should be certain and of such a character as would if false permit a remedy by action. (*Rex* v. *Abington*, 12 Mod. Rep., 401.)

Here it may be true that the respondent is informed and believes that Mr. Kelly is not a resident or elector in the twelfth ward, but it may also be true that in point of fact he is such resident and elector. There is no denial of the truth of that fact. Nor any traverse of the allegation in the affidavit. It is not denied that the relator if his affidavit is true has an interest in this matter nor but that the law has given him means to reach it. Nor would such denial avail. (*The State ex rel. Hanna* v. *The Common Council of the City of Rahway*, 33 N. J. [L. R.], 110; *People ex rel. Fuller* v. *Board of Supervisors Seneca Co.*, 18 How. Pr. Rep., 461; *People ex rel. Case* v. *Collins*, 19 Wend., 56–68; *People ex rel. Stephens* v. *Halsey*, 37 N. Y., 344.) In the case before us the matters set up constituted no defense or answer to the application and the writ was properly awarded. The court was also justified in fixing the time for the election. The defendant by its return denied that there was a vacancy to be filled and although notified by the mayor of the necessity for an election instituted no proceedings in regard to it. An order to proceed would have been nugatory unless accompanied by a special direction

as to the time of the election. It is insisted however that this was within the discretion of the common council and so it was, but the discretion was to be exercised and not withheld. It was also to be so exercised that the order and election should be complete within the time provided. This the public good not less than the statute demanded, and as it was obvious from the return that the discretion vested was to be abused or so exercised as to work injustice it was a matter to be considered by the court. "The court," says Mr. Willcock (p. 357, pl. 45), "will grant a *mandamus* to proceed to an election of a new mayor after the charter day has passed without such election, where the former mayor having the power to do so holds over and refuses to convoke an assembly for that purpose unless the charter restrains the right of electing to a particular time," and it will be granted for the election of other officers (Willcock, 361, pl. 56), and so it will be in this country although the charter day for the election of municipal officers has passed. (Dillon on Mun. Cor., § 675.)

We think no error was committed by the court below and the order should therefore be affirmed, with costs.

All concur.

Order affirmed.