THE CITY OF NEW YORK, Plaintiff, *v.* GEORGE McANENY, JOHN F. O'RYAN and GEORGE T. HARKNESS, Individually and Purporting to Act as Transit Commissioners and Claiming to Constitute the Transit Commission of the State of New York; ALFRED M. BARRETT, as Public Service Commissioner of the State of New York for the First District and Constituting the Public Service Commission of the State of New York for the First District; and JOHN H. DELANEY, as Transit Commissioner and Constituting the Transit Construction Commission of the State of New York, Defendants.

(Supreme Court, New York Special Term, May, 1921.)

Jurisdiction — courts of equity are not vested with power over appointment or removal of public officers.
Injunctions — when will be denied — transit commission contracts — Laws of 1921, chap. 134.

A court of equity is not vested with power over the appointment and removal of public officers. (P. 434.)

Jurisdiction to determine the title to public office belongs exclusively to courts of law and is exercised either by certiorari, mandamus, prohibition or quo warranto, in accordance with common law procedure or statutory direction. (P. 435.)

The standing of the city of New York in a court of equity in its proprietary capacity is no greater than that of any private litigant. (P. 440.)

The statute (Laws of 1921, chap. 134) creating the transit commission vests it, as successor of the local authority of the city of New York, with power " to approve contracts and modifications of contracts under any provisions of the Rapid Transit Act or any contract heretofore made and in respect of any power or right of approval under any law or contract and including any power or right of approval of modification of any contract" and in case the local authority should finally fail to approve the contract or contracts formulated under a plan of adjustment, readjustment and rehabilitation provided in said statute, " to execute and deliver such contracts in the name and in behalf of the city, with full legal force and effect

28

as if all approvals by the local authority or any local officer had been given." *Held,* that in an action by the city for an injunction to restrain the said transit commission from the positive performance of duties and functions transferred to it from pre-existing commissions by virtue of said statute, which said duties and functions it is alleged are in their essence a direct invasion of the constitutional rights and privileges of the plaintiff, the court has no inherent power to right the wrong unless thereby the civil property or personal rights of the city, as a proprietor, in contradistinction from the rights in common of the body of the people of the city, are affected. (Pp. 437–438, 441.)

Where the relief asked for is based upon an allegation that the transit commission, the defendants herein, are about to and will grant new pretended consents under the form of contracts which they will make for and in the name of the plaintiff with various street railroad companies and said contracts will purport to relieve the companies from the obligation of compliance with the provisions, conditions and obligations theretofore imposed and that said defendants will modify and alter provisions and conditions of the contract and restore and validate rights of operation which the local authority has forfeited, and that such acts will result in irreparable financial injury to the plaintiff, its people and inhabitants, the injunction will be denied and judgment rendered for defendants. (Pp. 439–441.)

ACTION for an injunction.

John P. O'Brien, corporation counsel (Hiram W. Johnson, John P. O'Brien, Wm. E. C. Mayer and Edgar J. Kohler, of counsel), for plaintiff.

Argued by Hiram W. Johnson.

Francis M. Scott and Godfrey Goldmark, for defendants.

Argued by Francis M. Scott.

McAVOY, J. The court of equity to which application for relief in this action has been addressed is not vested with power over the appointment and removal of public officers. Jurisdiction to determine title to

public office belongs exclusively to the courts of law and is exercised either by certiorari, mandamus, prohibition or quo warranto, according to the circumstances of the case and the mode of procedure established at common law or by legislative direction.

There cannot be found a case where a bill of injunction has been granted to restrain the appointment or removal of a municipal or state officer. Upon an early bill in equity in the Court of Chancery of the State of New York by a lawfully appointed officer, charging that he had been ousted of his office by one unlawfully appointed in his stead by the governor and praying for an injunction, a receiver and an account of fees until plaintiff's title to the office could be tried at law, the rule was that " This Court may not have jurisdiction to determine that question so as to render a judgment or decree of ouster of the office." 3 Edw. Ch. 450; 9 Paige, 507.

This was affirmed in the Court of Errors in 7 Hill, 259.

Validity of the removal of a public officer formerly functioning as transit commissioner and the title of the person removed or of the new appointees to the office may be tried by quo warranto or mandamus.

The immediate object of the bill in equity filed by the city is to prevent the removal from office of the former transit construction commission and the intrusion into the office of the newly appointed commission. No question of property is suggested in the allegation of matters of fact in the bill, nor would be involved in any decree that this court could make thereon. It is questionable, too, whether the city either as a political subdivision of the state or as a proprietary corporation has any standing to contest in behalf of the former commissioner the title to office of the present bodies functioning in his place and stead.

There are no facts appearing here which show that either of the ousted commissioners, whether the public service commissioner, or the transit construction commissioner, are any worse off than any other public officer illegally or improperly removed who has, if aggrieved, an ample remedy at law. If the office is filled by another person, the remedy is by quo warranto; if it be not filled, he may resort to mandamus. *People ex rel. Kelly* v. *Brooklyn,* 77 N. Y. 503; *State ex rel. McDermott* v. *Miller,* 45 N. J. L. 251.

In order to entitle even the party ousted from office to the relief demanded, a case must be presented appropriate for the exercise of judicial power. The rights in danger must be rights of person or property, not merely political rights which do not belong to the jurisdiction of the court, either in law or in equity, and in this state as in all the other states of the Union, with the exception of North Carolina, it is said that there is no property right in public office. *Butler* v. *Pennsylvania,* 10 How. (U. S.) 402.

The court will, therefore, not, in deference to the almost universal ruling, restrain the action of the incumbents, for thus to restrain them is to restrain all the functions of the office. They being in, even if wrongfully, no one else can enter until they are removed and they must act or no one can.

Jurisdiction now vested in the defendants, which will include the powers of the public service commissioner under the Public Service Commissions Law and the powers of the transit construction commissioner under the Rapid Transit Act, may be lawfully transferred from the former state authority to the newly constituted state authority and even if they could not, the equity court could not adjudge the statute unconstitutional unless there was a controversy between litigants where it is sought to enforce rights affecting

the life, liberty or the property of the litigants before it.

There can be no devolution of power on the courts of the state to render advisory opinions instructing or directing former state officers whether they are or are not legally deposed, or giving confirmation to the assumed authority of the new commissioners.

Apparently the real object of the litigation is to prevent the transit commissioners created under the act known as chapter 134 of the Laws of 1921 from the positive performance of duties and functions which it is alleged are in their essence a direct invasion of the city's constitutional rights and privileges. It is said that if the transit commission proceeds to endeavor to function under the act it will necessarily impose obligations upon them and curtail the powers and abrogate the contracts of the plaintiff in such a way that rights of local self-government contract obligations and security of municipal funds and credits will be impaired and destroyed.

The ground for injunctive relief based upon these apprehensions of the city's authorities are mainly bedded in this prescribed unusual grant to the transit commission whereby it is made the successor of the local authority of the plaintiff, reading, " to approve contracts and modifications of contracts under any provisions of the Rapid Transit Act or any contract heretofore made and in respect of any power or right of approval under any law or contract and including any power or right of approval of modification of any contract " and bestows another unusual devolution of power upon the transit commission in case the local authorities shall finally fail to approve the contract or contracts formulated under a plan of adjustment, readjustment and rehabilitation provided in the act, " to execute and deliver such contracts in the name and in behalf of the City, with full legal force and

effect as if all approvals by the local authority or any local officer had been given."

These provisions of the act in so far as they vest or appear to invest the transit commission with power to consent to modifications of provisions in existing contracts in which the city has proprietary rights or such devolution of power to consent to changes, rehabilitations, combinations of routes, traffic arrangements, etc., as theretofore has been confided to local authority by the Constitution of the state in article III, section 18, may involve justiciable questions ultimately because it would seem confessedly from the act itself there is an ominous foreboding of resistance to these enactments by municipalities in the declaration by the legislative power of the existence of the much vexed " emergency " calculated to lift this particular prescription from the field of obstructive inhibitions of constitutional mandates and provisos.

If and when these matters have gone through the various hearings provided for by the Transit Act and have not, through accommodation to the city's demands, become acceptable to the local authority there is a contract proposed which is either not adapted to or reasonably intended to accomplish the needs arising out of the alleged emergency the court may by injunction interpose to prevent its consummation.

Or if nothing of " emergency " is discernible to the court and the local authority has not accepted or consented to the contracts arising from the proposed plan of adjustment, the proposal may then be made that the court interfere with the adoption by the commission in behalf of the city of such contracts on the grounds now urged or such as may then be applicable. That such discussion now is premature and academic doth appear in this: The act gives the board of estimate the right to approve or adopt the plan. It does

indeed provide that in the event of ultimate refusal the transit commission may approve, consent or adopt in lieu of such local authority and as though it had given the necessary consent, but conceivably that occasion may never arise. The contracts and adjustments proposed to the board of estimate in the plan of adjustment and rehabilitation may be so grounded in justice to the city as to commend itself to the minds of all rational men.

Is it to be asserted that it will not thus clothed be accepted? The germ of the answer lodges in the question. If it be accepted naught of the city's proprietary nor indeed its political rights are lost or even suspended. If it be not accepted and no right of the city or its people be infringed by its terms, a plan of rapid transit which relieves the present conditions and promises proper expansion for the future may be rejected with so little regard for that exercise of power conferred as to give rise to a public emergency into which the legislature may plunge without restraint excepting that governed by common reason, justice and the course of equity and the law.

The complaint grounds its demand for the inhibition of the injunctive process upon an allegation that the transit commission, these defendants, are about to and will grant new pretended consents under the form of contracts which they will make for and in the name of the plaintiff with various street railroad companies and said contracts will purport to relieve the companies from the obligation of compliance with the provisions and conditions and obligations theretofore imposed and that these defendants will modify and alter provisions and conditions of the contract and restore and validate rights of operation which the local authority, for instance now the board of estimate and apportionment, has forfeited and that such acts will result in irreparable financial injury to the plain-

tiff, its people and inhabitants, unless thwarted by judicial order.

In determining whether or not at this time the court may interfere with a proposed act, even though it were asserted by the defendants that they were about to do it, it must be remembered that the city's standing in the court of equity in its proprietary capacity is no greater than that of any private litigant. When the government comes as a suitor into a court of equity its claims appeal to the Chancellor with no greater force than do those of an individual under like circumstances. *Bank of United States* v. *Planters' Bank,* 9 Wheat. 904.

There is not one law for the sovereign and another for the subject, not one law for the corporate city and another for its inhabitants. Both stand upon equality before the law, and the city acting for the sovereign state, is merged in the dealer, contractor or suitor. *People* v. *Stephens,* 71 N. Y. 527.

The court has no inherent power to right a wrong unless thereby the civil property or personal rights of the city as a proprietor are affected. The rights to be affected must be personal or proprietary to the city, as distinguished from the rights in common of the body of the people of the city.

The judicial power over the legislative branch of government extends merely to determining controversies in which the civil property or personal rights of the city proprietor is actually affected by a particular determinative act. It may not pass upon the act of a co-ordinate independent department of government until there arises the particular instance in which the limits of power have been attempted to be exercised. The imminence of danger of the execution of contracts that will violate the city's prescribed constitutional rights cannot be before the court for

even an examination of the legality thereof until they are proposed to be executed.

The preventative jurisdiction of equity does not extend to any proposed illegal official act irrespective of the fact whether the act sought to be restrained involves a waste of public property, violation of public rights or injury to the interest of taxpayers as such. There must be special, peculiar, personal proprietary rights of the municipality affected before the court may interpose the judicial restraining arm.

None of the other grounds of unconstitutionality urged as voiding the act permit the court at this time to interpose against the exercise of the indubitable lawful functions which the legislature had power to transfer from the pre-existing commissions to those which it has now constituted with purely regulative power.

Judgment accordingly.